**Pink Wayne SLOAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–87–00027–CR.**

Court of Appeals of Texas,
Tyler.

Jan. 29, 1988.

Rehearing Overruled March 10, 1988.

Douglas E. Lowe, Palestine, for appellant.

Richard Handorf, Dist. Atty., Palestine, for appellee.

COLLEY, Justice.

Pink Wayne Sloan was convicted of burglary of a building by a jury who assessed his punishment at seven years' confinement. The jury recommended probation for a period of five years. Accordingly, the trial judge suspended imposition of sentence and placed Sloan on probation for that term of years.

We reverse and remand.

Sloan urges five points of error. Under his first three points, he claims *Batson* [1] error.

By his fourth point of error he attacks the court's charge at the guilt-innocence phase, claiming the court erred in charging the jury in the abstract that a person commits burglary "if, without the effective consent of the owner, he enters a building . . . not then open to the public with intent to commit *a felony or* any theft." (Emphasis added.)

He asserts by his fifth point of error that the trial court erred in including in its charge a definition of the word "building" to mean "any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament or use."

The evidence shows that Sloan entered into a building occupied by Citizens Credit

Union by breaking the glass out of a window at ground level.

The police were alerted to the burglary by a silent alarm and Sloan was apprehended while still in the building by police officers shortly after 3:00 a.m. on April 3, 1986.

In addressing Sloan's point four, we note that the court's charge instructs the jury: "Before you would be warranted in finding defendant guilty, you must be satisfied from the evidence beyond a reasonable doubt that the entry, if any, in the building was so made with the intent to commit the *specific crime of theft.*" (Emphasis ours.) The court in paragraph 5 of the charge, the paragraph of the charge applying the law of burglary to the facts, properly so charged the jury.

◼ Considering the charge in its entirety, we conclude the error in including the phrase "with intent to commit a felony or" in the abstract definition of burglary, did not harm Sloan. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App.1984). Sloan's fourth point is overruled.

◼ After consideration of Sloan's fifth point of error, we conclude that the inclusion of the word "habitation" in the court's definition of "building" [2] did not harm Sloan. The evidence clearly demonstrates that the building entered by Sloan was not a habitation but an "enclosed structure" used as offices for a credit union. Neither *Toler v. State*, 546 S.W.2d 290 (Tex.Cr.App. 1977), nor *Dowden v. State*, 537 S.W.2d 5 (Tex.Cr.App.1976), mandate reversal here. Under *Almanza*'s rule, we conclude the error is harmless. Sloan's fifth point of error is overruled.

By his first three points of error Sloan argues that the State's peremptory challenge of the sole black juror "within striking distance" remaining on the panel of

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. *See* Tex.Penal Code Ann. § 30.01(2) (Vernon 1979).

jurors constituted "purposeful [racial] discrimination"[3] condemned in *Batson.*

The record shows that some blacks were on the panel of prospective jurors, but no blacks served on the petit jury in the case. It is undisputed that the State peremptorily challenged one black prospective juror, Mrs. Warren Smith.

The State's voir dire examination of Mrs. Smith is as follows:

MR. HANDORF: Ms. Smith, Ms. Warren Smith, are you a married lady?

VENIREMAN SMITH: Yes, I am.

MR. HANDORF: What does your husband do for a living?

VENIREMAN SMITH: Works on the railroad.

MR. HANDORF: Union Pacific?

VENIREMAN SMITH: Yes.

MR. HANDORF: How long has he been so employed?

VENIREMAN SMITH: I beg your pardon.

MR. HANDORF: How long has he worked for them?

VENIREMAN SMITH: Twenty-two or twenty-three years.

MR. HANDORF: Do you work outside the home?

VENIREMAN SMITH: No.

MR. HANDORF: Do y'all have any children?

VENIREMAN SMITH: We have six.

MR. HANDORF: Okay. Any of them at home?

VENIREMAN SMITH: I have one at home.

MR. HANDORF: One at home?

VENIREMAN SMITH: Yes.

MR. HANDORF: What is your religious preference?

VENIREMAN SMITH: Church of God.

MR. HANDORF: What are the ages of your children left at home? Do you have any in the 20's?

VENIREMAN SMITH: My youngest one at home is 16. I have one 17.

MR. HANDORF: Do they go to school in Anderson County?

VENIREMAN SMITH: Westwood.

MR. HANDORF: Okay. Mighty fine. Thank you ma'am....

Following a recess during which the parties exercised their respective peremptory challenges, and before the panel of jurors was dismissed and the petit jury sworn, Sloan objected to the impaneling of the jury "for the reason that the prosecution [sic] has engaged in selective and systematic excusing [sic] of jurors in that the sole black juror that was on the panel, Mrs. Warren Smith, was struck with a peremptory strike by the prosecution [sic]."

Sloan then called the prosecutor, District Attorney Richard Handorf, as a witness in support of his objection. Handorf testified that he struck Smith, who was the only black "on the panel left to be struck," and that the jury selected contained no blacks. He also stated that "only two other blacks that were within striking distance were excused based on [his] challenge for cause."

Handorf, in response to defense counsel's inquiry why he had struck Smith, stated:

A. As I recall Mrs. Smith, she was a tall lady and got up and answered her questions in, I thought, a very weak way. She did not appear to have any interest in the case from my observation. I felt like that she was a person that would not take any interest in it one way or another, and I struck her along with any number of others for the same reason.

On cross-examination by the prosecutor, Mr. Handorf testified as follows:

Q. Did you strike her because she was black?

A. No, sir. I think the record will show that in the past probably the majority of the cases that's been tried this year have been tried with probably black defendants on it. We do not strike blacks as a matter of course or as a systematic way of removing them from the jury. This has occurred in

---

**3.** In violation of the Equal Protection Clause of the Fourteenth Amendment.

many cases involving black defendants. Blacks have served on many of the juries this year involving black defendants.

The trial court overruled Sloan's objection to the prosecutor's peremptory challenge of Smith, as well as his motion for mistrial. The trial court gave no reasons for his ruling, and although a hearing was conducted on Sloan's *Batson* objection, no written findings and conclusions were made.

■ Because of the crucial role of the trial judge in passing initially on claimed *Batson* error, the Court of Criminal Appeals has suggested[4] that the trial court make written findings of fact and conclusions of law respecting the issues of fact and law presented in such hearings relevant to the claim of the defendant that he has been the victim of racial discrimination by the prosecutor's exercise of peremptory strikes in his case. However, in the case before us, there are no conflicting fact issues pertinent to the points of error under consideration. The trial judge having conducted the voir dire examination heard the questions of the prosecutor and the responses of Smith. He also heard the undisputed testimony offered by both Sloan and the State on the *Batson* issue. The court's action in overruling the objection and motion for mistrial necessarily implies that he concluded under the circumstances that the State's peremptory challenge of Smith did not amount to racial discrimination under *Batson*'s rule. Hence, in our judgment no useful purpose would be served by abating this appeal and remanding the cause for entry of written findings of fact and conclusions of law. In *Keeton*, our Court of Criminal Appeals interpreted *Batson* as holding "that the State's purposeful or deliberate denial of jury participation to black persons because of race violates a [black] defendant's rights under the equal protection clause of the [Fourteenth Amendment]." The *Keeton* court also concluded that under *Batson* a defendant in order to invoke the protection of the equal protection clause, must establish the State's "purposeful [racial] discrimination by showing that:

1. he was a member of a cognizable racial group;[5]
2. the prosecutor had exercised peremptory challenges to remove the venire members of the defendant's race;
3. the facts and any other relevant circumstances raise an inference that the [prosecutor] used peremptory challenges to exclude the veniremen on account of their race."

*Keeton,* 724 S.W.2d at 65; *see also Batson,* 106 S.Ct. at 1723.

*Batson* also teaches that trial judges "will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." *Id.* The rule in *Batson* further provides that once the minority defendant has made a prima facie showing of racial discrimination, "the burden shifts to the State to come forward with a [racially] neutral explanation [for the challenge]." *Id.* The "explanation need not rise to the level justifying exercise of a challenge for cause," *Id.,* but may not consist only of an assertion by the prosecutor, based on his intuition or assumption that Black jurors would favor black defendants "because of their shared race." *Id.* (citations omitted).

*Batson* makes it clear that whether intentional racial discrimination occurs is a fact question, the answer to which necessarily depends in some degree on the credibility of the prosecutor involved. Thus, "a reviewing court ordinarily should give [a trial judge's findings] great deference." *See Batson,* 106 S.Ct. at 1724 n. 21 (citations omitted). However, the rule in *Batson* requires the articulation by the prosecutor of "a neutral explanation related to the particular case [on trial]."

■ Sloan argues that he established a prima facie case of racial discrimination. He asserts that, given the perfunctory nature of the prosecutor's questions to Smith

---

**4.** *See Keeton v. State,* 724 S.W.2d 58, 67 (Tex.Cr. App.1987).

**5.** Sloan made this showing only by reasonable implication. The State has filed no brief in this case.

on voir dire, the prosecutor's explanation of his reasons for striking Smith do not satisfy *Batson*'s requirements. We agree. The prosecutor's brief voir dire examination of Smith only brought out information about the juror related to her marital status, her family, her religious preferences, her employment, her husband's work history, and the ages of her children. The explanation given by the prosecutor for the strike that was related to the case was that Smith answered the questions weakly, and that he perceived that the juror had little interest in the case.

From our reading of the record, we find that Smith gave direct and complete answers to each routine question asked her. Indeed, no question was propounded by the prosecutor that sought to discover facts or circumstances suggesting that the juror might lean in favor of Sloan in the trial. Considering the undisputed facts and circumstances here presented, we conclude that the reasons given by the prosecutor to support his peremptory challenge of Smith do not constitute a reasonable trial-related explanation sufficient to rebut Sloan's prima facie case of racial discrimination. The trial judge abused his judicial discretion by his implied finding to the contrary. Points one, two, and three are sustained. *Batson* and *Keeton*.[6]

We doubt that the racial discrimination committed by the State caused Sloan any harm,[7] but are persuaded that the federal constitutional error here involved is one that "'affects substantial rights' [of Sloan]," *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), and therefore, cannot be treated as harmless error. *Id.; see also Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

The judgment of conviction is reversed and the cause is remanded for a new trial.

---

**6.** The *Keeton* court interprets *Batson* to mean that where even one juror is improperly challenged, the rule in *Batson* comes into play. *Keeton,* 724 S.W.2d at 65 n. 5.

**7.** Because the record reveals that the evidence of his guilt was overwhelming, and that probation was recommended by the all-white jury.