Pink Wayne SLOAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 305–88.

Court of Criminal Appeals of Texas,
En Banc.

April 24, 1991.

Douglas E. Lowe, Palestine, for appellant.

Richard Handorf, Dist. Atty. & Joe Bridges, Asst. Dist. Atty., Palestine, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

### PER CURIAM.

A jury convicted appellant of burglary of a building and assessed punishment at seven years confinement, probated. The Tyler Court of Appeals, relying on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Keeton v. State*, 724 S.W.2d 58 (Tex.Cr.App.1987), found the State improperly utilized a peremptory challenge to exclude from the jury the only member of appellant's race and reversed the conviction. *Sloan v. State*, 809 S.W.2d 234 (Tex.App.—Tyler 1988).

We granted the State's petition for discretionary review to determine the correctness of the Court of Appeals' holding. After reviewing the Court of Appeals' opinion, the briefs and the record, we conclude that the Court of Appeals reached the correct result and that our decision to grant this petition was improvident. Tex.R.App. Pro.Rule 202(k). As in every case where we determine that the decision to grant review was improvident we do not necessarily adopt either the language or reasoning of the lower court.

The State's petition for discretionary review is dismissed.

McCORMICK, Presiding Judge, dissenting.

A jury convicted appellant, Pink Wayne Sloan, of burglary of a building and assessed a sentence of seven years' confinement with the sentence being probated. He appealed. The Tyler Court of Appeals found that the State had improperly utilized its peremptory challenges to exclude from the jury one member of appellant's race. *Sloan v. State*, 809 S.W.2d 234 (Tex. App.—Tyler 1988). The State sought discretionary review from this Court and we granted same to determine the correctness of the Court of Appeals' holding. Today the majority permits an incorrect opinion to stand as precedent by improvidently granting the State's petition. I must dissent.

After the voir dire of the venire in this case, the State used one of its peremptory challenges to remove a potential juror that was of the same race as appellant. Appellant objected "for the reason that the prosecution has engaged in selective and systematic excusing [of] the sole black juror." See *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Although the trial judge did not explicitly find a prima facie showing of discrimination, he nonetheless allowed the defense to question the prosecutor regarding the use of his peremptory challenge. The prosecutor then explained:

"As I recall Mrs. Smith, she was a tall lady and got up and answered her questions in, I thought, a very weak way. She did not appear to have any interest in the case from my observation. I felt like that she was a person that would not take any interest in it one way or another, and I struck her along with any number of individuals for the same reason."

When asked if he struck the potential juror because she was black, the prosecutor testified:

"No, sir. I think the record will show that in the past probably the majority of the cases that's been tried this year have been tried with probably black defendants on it. We do not strike blacks as a matter of course or as a systematic way of removing them from the jury. This has occurred in many cases involving black defendants. Blacks have served on many of the juries this year involving black defendants."

After these explanations, the defense attorney did absolutely nothing. He did not question the prosecutor. He did not call the venireman to the stand. He presented no documentary evidence. He did not attempt to compare the challenged venireman with any other that was not challenged. *He did not even voice his disapproval.* In short, the defense in the case did nothing to remotely contest the prosecutor's explanation. The trial court, with nothing further to go on, overruled without elaboration appellant's objection to the prosecutor's use of his challenge. The Court of Appeals, however, disagreed with the trial court's holding.

The lower appellate court observed that "a reviewing court ordinarily should give a trial judge's findings great deference." 809 S.W.2d at 237, citing *Batson*, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724 n. 21. The Court of Appeals noted, however, that *Batson* also requires the prosecutor to specifically articulate "a neutral explanation related to the particular case on trial." 809 S.W.2d at 237. The court then determined that the prosecutor in this case failed to give such a trial related explanation. The Court of Appeals wrote:

"[Appellant] argues that he established a prima facie case of racial discrimination. He asserts that, given the perfunctory nature of the prosecutor's questions to Smith on voir dire, the prosecutor's explanation of his reasons for striking Smith do not satisfy Batson's requirements. We agree. The prosecutor's brief voir dire examination of Smith only brought out information about the juror related to her marital status, her family, her religious preferences, her employment, her husband's work history, and the ages of her children. The explanation given by the prosecutor for the strike ... was that Smith answered the questions weakly, and that he perceived the juror had little interest in the case.

"From our reading of the record, we find that Smith gave direct and complete answers to each routine question asked her. Indeed, no question was propounded by the prosecutor that sought to discover facts and circumstances suggesting that the juror might lean in favor of [appellant] in the trial. Considering the undisputed facts and circumstances here presented, we conclude that the reasons given by the prosecutor to support his peremptory challenge of Smith do not constitute a reasonable trial related explanation sufficient to rebut [appellant's] prima facie case of discrimination." 809 S.W.2d at 237.

In its petition for discretionary review, the State attacked the Court of Appeals' holding for two reasons. First, the State asserted that the Court of Appeals' finding that the State's peremptory challenge was not passed upon a reasonable "trial related explanation" was incorrect. In its brief on the merits, the State explained: "The State's burden of proof, beyond a reasonable doubt, requires an alert, watchful, comprehending jury. Disinterest by a juror is a threat to the State's case and to justice as a whole. It is related to the application of the facts of the case and the law by the jury." Second, the State asserted that the Court of Appeals' holding improperly forces the State to elicit biased responses from prospective jurors in order to safely exercise a peremptory challenge. The State, noting that a biased response would allow the State to challenge the prospective juror for cause, argued that the Court of Appeals' holding would in effect eliminate the use of peremptory challenges against any member of the venire that is of the same race as the defendant. Both of the State's arguments are meritorious and the majority by placing its "improvidently

granted" stamp on the Court of Appeals' opinion leaves as precedent a decision that misconstrues *Batson* and demonstrates a complete lack of understanding of the Supreme Court's treatment of the issues.

In *Batson*, the Supreme Court reaffirmed prior holdings which precluded, as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the use of peremptory challenges to exclude members from jury service solely because of the members' race. See *Batson*, 476 U.S. at 84, 106 S.Ct. at 1716, citing *Swain v. Alabama*, 380 U.S. 202, 203–204, 85 S.Ct. 824, 826–827, 13 L.Ed.2d 759 (1965). See generally *Batson*, 476 U.S. at 84 n. 3, 106 S.Ct. at 1716 n. 3. The Court, however, broke away from prior holdings to alter the manner in which an aggrieved party may establish the discriminatory use of peremptory strikes. Under *Batson*, once the defendant makes out a "prima facie" showing of discrimination, the burden shifts to the State to explain adequately the use of its strikes. *Batson*, 476 U.S. at 94, 106 S.Ct. at 1721. Moreover, the *Batson* Court articulated that the State's burden to explain cannot be met by a prosecutor's "mere general assertions" that he did not discriminate or that he properly performed his official duties. Id. "Rather, the State must demonstrate that 'permissible racially neutral selection criteria and procedures have produced the monochromatic result.' " Id., quoting *Alexander v. Louisiana*, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972). The Supreme Court reasoned that if "general assertions were accepted as rebutting

a defendant's prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.' " 476 U.S. at 98, 106 S.Ct. at 1724. Because of this, the Court concluded, "the prosecutor must articulate a neutral explanation related to the particular case to be tried." Id. In a footnote, the Court added:

"The Court of Appeals for the Second Circuit observed in *McCray v. Abrams*, 750 F.2d [1113], 1132 [ (2nd Cir.1984) ], that 'there are any number of basis' on which a prosecutor may believe that it is desirable to strike a juror who is not excusable for cause. As we explained in another context, however, the prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." Id., quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, [1096] 67 L.Ed.2d 207 (1981).

It is highly significant that the Supreme Court referred to a Title VII case in order to clarify its position of what was meant by a "neutral explanation." By invoking *Burdine*'s analysis of the burden of proof in a suit brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), I understand that the Court intended to adopt a similar burden[1] in a *Batson* problem; that is:

"The burden that shifts to [the prosecutor], therefore, is to rebut the presumption of discrimination by producing evidence that the [venireman] was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason. The [prosecutor] need not persuade the

---

**1.** *Burdine* was an extension of the Court's holding in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *McDonnell Douglas* the Court first set forth the basic allocation of burdens of proof and persuasion in a Title VII case. 411 U.S. at 800–805, 93 S.Ct. at 1823–1826. The Court in *Burdine* paraphrased the holding in *McDonnell Douglas* as follows:

"First, the plaintiff has the burden of proving ... a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the

plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.

"The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 252–253, 101 S.Ct. at 1093–1094.

This allocation of burdens of proof and persuasion is the same as that to be used in a *Batson* problem.

court that it was actually motivated by the proffered reasons. It is sufficient if the [prosecutor's] evidence raises a genuine issue of fact as to whether it discriminated against the [venireman]. To accomplish this, the [prosecutor] must clearly set forth, through the introduction of admissible evidence, the reasons for the [venireman's] rejection. *The explanation provided must be legally sufficient to justify a judgment for the [prosecutor].* If the [prosecutor] carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. *Placing this burden of production on the [prosecutor] thus serves simultaneously to meet the [defendant's] prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the [defendant] will have a full and fair opportunity to demonstrate pretext. The sufficiency of the [prosecutor's] evidence should be evaluated by the extent to which it fulfills these functions.* Burdine, 450 U.S. at 254–256, 101 S.Ct. at 1094–1095 (footnotes and citations omitted; emphasis added).[2]

Thus, to satisfy *Batson*'s requirement of a "neutral explanation" the prosecutor must articulate a reason (or reasons) for the challenge that provides the defendant with a sufficient amount of information such that he may show the pretextual nature of the reason (if indeed a pretext does exist). When the *Batson* court determined that the explanation given by the prosecutor must be "related to the particular case to be tried," obviously it did not intend that a venireman could be constitutionally excluded from service on the jury only when there was reason to do so based on a bias for or prejudice against any of the laws or facts that were *unique* to that particular case. As the State aptly points out in its brief (and what the majority does not wish to come to terms with), such would vitiate

the use of peremptory challenges and replace them with challenges for cause.

The Supreme Court, in a case decided after *Batson*, countenanced the use of peremptory challenges to achieve legitimate interests, and decided that such interests may include a "qualified and unbiased jury." Specifically, Justice Scalia, writing for the majority in *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), declared:

> "Although the constitutional guarantee runs only to the individual and not to the State, the goal it expresses is jury impartiality with respect to both contestants: neither the defendant nor the State should be favored. This goal it seems to us, would positively be obstructed by a petit jury cross section requirement, which as we have described, would cripple the device of peremptory challenge. We have acknowledged that that device occupies an important position in our trial procedures, and has indeed been considered a necessary part of trial by jury. Peremptory challenges, by enabling each side to exclude those jurors it believes will be most partial toward the other side, are a means of eliminating extremes of partiality on both sides, thereby assuring the selection of a *qualified* and unbiased jury." 110 S.Ct. at 809 (citations omitted and emphasis added).

Certainly then, the State's use of a peremptory challenge to formulate a "qualified" jury, would be a legitimate (i.e., "race neutral") reason related to the particular case.

In this case, the prosecutor explained that he used a peremptory challenge to remove the venireman because he felt that she was inattentive. The judge who was physically present to see and hear the venireman and to judge her particular demeanor accepted, albeit implicitly, the prosecutor's assessment of the potential juror. In any situation where demeanor will be a significant factor in the assessment of a particular issue on appeal, neither this

**2.** For clarity the designation of the various parties to the Title VII suit have been altered to the proper designation of parties in a *Batson* problem (e.g. "employer" and "defendant" in the original opinion have been designated "prosecutor"; "plaintiff" in the original opinion is either designated as "venireman" or as "defendant" depending on the context and circumstances).

Court nor the Courts of Appeals is in any position to second guess the findings of the trial court. Indeed, in the case before us even defense counsel accepted the prosecutor's explanation since he neither questioned the explanation nor even attempted to show a pretextual nature of the explanation. Perhaps even more important, there was absolutely no challenge to the prosecutor's assertion that he had struck "any number of individuals for the same reason." See and cf., *Canada v. State*, 660 S.W.2d 528, 530 (Tex.Cr.App.1983) (plurality opinion) (prosecutor's statement that a potential witness was hospitalized and thus unable to testify was accepted by this Court as being true since it was unrefuted by defense attorney at trial); *Hicks v. State*, 525 S.W.2d 177, 179 (Tex.Cr.App. 1975) (defense attorney's statement that the prosecutor was standing behind the defendant when he raised his voice and looked down at the defendant and said "there is somebody that we haven't heard from in this case," was accepted by this Court as being true since it was "undisputed by the prosecutor and unquestioned and unqualified by the court in whose presence the statement was made.") Considering first, that the defense attorney did not so much as note his disapproval of the prosecutor's explanation, and second, that "[t]he ultimate burden of persuading the trier of fact that the [prosecutor] intentionally discriminated ... *remains at all times with the [defense],*" *Burdine*, 450 U.S. at 252–253, 101 S.Ct. at 1093–1094 (emphasis added), it is inconceivable to me how any appellate court can reverse the conviction in this case. Appellant has simply failed to prove intentional discrimination in the trial court

and bases his appellate arguments on mere conjecture and speculation. The majority's decision to allow this opinion to stand as precedent must not go unnoticed.

Also, I cannot accept the Court of Appeals' reasoning that the prosecutor's explanations were inadequate since "no question was propounded" which sought to discover facts and circumstances suggesting that as a juror the venireman might lean in favor of appellant. This may be a factor that the *trier of fact* (i.e. the trial court judge) can consider in determining whether the prosecutor's reasons are merely pretextual when such is actually brought to its attention, but *requiring the prosecutor to ask questions concerning bias or prejudice is, and should not be, constitutionally required. See *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1094 n. 10.[3] See also Id. at 259–260, 101 S.Ct. at 1096–1097. ("[t]he Court of Appeals erred by requiring the [prosecutor] to prove by a preponderance of the evidence the existence of nondiscriminatory reasons ...."). Undoubtedly, if in any case where the record unequivocally demonstrates that a potential juror came to court either unshaven and shabbily dressed or inattentive to the point of sleeping during the voir dire, such alone is sufficient in and of itself to justify the use of a peremptory challenge. I am quite sure that the Court of Appeals and the majority would not require additional questioning in such a case before it would sanction the use of a peremptory challenge to remove this potential juror.[4] In the case before us, where the record is not unequivocal, it is simply inexplicable why this Court and the Court of Appeals will not defer to the trial court's findings.

3. The Supreme Court writes:
   "In saying that the presumption drops from the case, we do not imply that *the trier of fact* no longer may consider evidence previously introduced by the [defendant] to establish a prima facie case. A satisfactory explanation by the [prosecutor] destroys the legally mandatory inference of discrimination arising from the [defendant's] initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom *may be considered by the trier of fact* on the issue of *whether the [prosecutor's]* explanation is pretextual." (Emphasis added.)

4. Imagine, if you will, the type questions that the Court of Appeals and the majority would have the prosecutor ask the venireman so as to substantiate the use of a peremptory challenge: "Why aren't you interested in this case?" "Am I boring you?" "Didn't you get enough sleep last night?" And after asking these questions, how can any reasonable person expect the prosecutor to keep the venireman whom he has been forced to offend by *having* to ask the questions in the first place. It becomes a no win situation for the State and the majority, oblivious to such, now sanctions this with its "improvident grant" stamp.

This Court has adopted the "clearly erroneous" criterion as the standard of review for Texas appellate courts in addressing *Batson* issues. *Whitsey v. State*, 796 S.W.2d 707, 721 (Tex.Cr.App.1990) (opinion on rehearing). Further, the Court explained that:

> "Although the meaning of the phrase 'clearly erroneous' is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles ... is that a finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty ... if it undertakes to duplicate the role of the lower court.* In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.* If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Whitsey*, 796 S.W.2d at 721 (original punctuation altered and citations omitted; emphasis added), quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–574, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518 (1985).

In the case before us, the trial court found the prosecutor's explanations to be "race-neutral" and there is *nothing* except conjecture before this Court and the Court of Appeals to suggest otherwise. Once again, the defense *never even put into question*—either by cross-examination or presenting evidence—the prosecutor's explanations in the trial court where such should have been presented and ruled upon. The Court of Appeals clearly engaged in the prohibited *de novo* review of the trial court's decision and clearly placed an improper burden of proof upon the prosecutor to disprove intentional discrimination. The majority's decision to improvidently grant the State's petition ignores the realities of the situation. When one uses the proper *Anderson v. Bessemer City* standard of review that we adopted in the *Whitsey* opinion, it is preposterous to say that the trial court's findings in the case before us are clearly erroneous. The Court of Appeals is clearly wrong in so finding. The opinion of the Court of Appeals should be reversed and the judgment of the trial court should be affirmed.

Added to the majority's refusal to correct an incorrect published opinion is the fact that the opinion is in conflict with another opinion from the Court of Appeals. The exact issue that is before us today and ripe for consideration was before the Houston Court of Appeals in *Gardner v. State*, 782 S.W.2d 541 (Tex.App.—Houston [1st Dist.] 1989). There, the appellate court decided just the opposite of what the Tyler Court of Appeals did in the case before us. The Houston court writes:

> "Appellant also argues on appeal that the prosecutor should have asked the two struck black venirepersons direct questions if the prosecutor was bothered by anything she had observed about them.

> "This Court addressed the same situation in *Vargas v. State*, 781 S.W.2d 356 (Tex. App.—Houston [1st Dist.] 1989, pet. filed). In that case, as here, the appellant did nothing further to prove his allegations that the State exercised its peremptory challenges in a racially discriminatory manner, or that the prosecutor's neutral explanations were merely pretextual. He did not cross-examine the prosecutor, introduce any documentary evidence, or offer any testimony of his own. In addition there, as here, the appellant

did not attempt to compare the challenged black venireperson with any of those venirepersons who were not challenged by the prosecution. However, in his brief on appeal, appellant there, as here, offered for the first time on appeal, a comparison of the white venirepersons against whom the State did not exercise a peremptory strike with those black venirepersons struck by the State. This Court held that rebuttal evidence will not be considered for the first time on appeal." 782 S.W.2d at 545.

It is beyond my comprehension why this Court does not exercise its jurisdiction to hear and decide the merits of a case concerning this area of law that has proven troublesome for the Courts of Appeals and will continue to do so.

Because the majority shirks its responsibility to clarify an area of law that needs clarification and lets stand an opinion that is unquestionably wrong, I dissent.

CAMPBELL and WHITE, JJ., join this dissent.