Affirmed and Opinion filed November 3, 2005









Affirmed
and Opinion filed November 3, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00305-CR

____________

 

TERRENCE DEWOYNE
ELI,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 950,037

 



 

O P I N I O N








Appellant, Terrence Dewoyne Eli, was
charged by indictment with possession of 
cocaine with intent to deliver.  See
Tex. Health & Safety Code Ann.
' 481.112(a), (f)
(Vernon 2003).  Appellant entered a plea
of Anot guilty@ and elected to
have the jury assess punishment in the event of a guilty verdict.  The jury found appellant guilty as charged
and subsequently assessed punishment at fifteen years= imprisonment in
the Texas Department of Criminal Justice, Institutional Division, and a fine of
$7,500.  In four points of error,
appellant contends (1) the trial court erred in overruling his Batson challenge,
(2) the evidence was legally insufficient, (3) the evidence was factually
insufficient, (4) and the court erred in excluding a co-defendant=s allegedly
inculpatory hearsay statements.  We
affirm.

At approximately 10:00 a.m., on March 26,
2003, appellant was a passenger in a vehicle traveling on Interstate 10 near
Baytown, Texas.  Two Texas Department of
Public Safety troopers noticed that neither appellant nor the driver of the
vehicle was wearing a seat belt.  In
response, the troopers executed a routine traffic stop.

Once stopped, the driver, later identified
as Donald Hayward, immediately exited the vehicle and met Trooper Brenda Hoover
at the rear of the car.  This action
aroused Hoover=s suspicions because typically drivers
wait inside their vehicle until an officer approaches.  With her senses heightened, Hoover noticed
the odor of marijuana emanating from Hayward. 
Hoover gestured to her partner, Trooper Nathaniel Taylor, who then
approached the passenger side of the vehicle. 
Taylor asked appellant to step out of the car.  Appellant complied with Taylor=s request.

After ordering Hayward to stand in front
of the patrol car, Hoover also walked towards the passenger side of the
vehicle.  From there, Hoover observed
marijuana residue and a small package wrapped in masking tape on the floorboard
behind the passenger seat.  Hoover voiced
her observation about the package and instantly appellant took off
running.  Taylor quickly gave chase, and
Hoover handcuffed and secured Hayward inside the patrol car.  Hoover also put in a request for backup.  Within minutes, appellant was apprehended and
returned to the scene.  Shortly
thereafter, DPS Corporal Kevin James also arrived on the scene and proceeded to
question both suspects.  A field test on
the contents of the package indicated the presence of cocaine.  Later tests showed the substance was 992.90
grams of cocaine.








State=s Use of
Peremptory Strikes

In his first point
of error, appellant contends the trial court erred in overruling his Batson motion
because the State allegedly used its peremptory challenges to strike minority
members of the venire.  After the parties
exercised their peremptory strikes, appellant alleged the State improperly used
strikes against veniremembers 19, 25, 30, 34, and 36 based on their race.[1]  After appellant made his objection, the trial
court asked the State to provide a race-neutral reason for the strikes.

Excluding a person from jury service
because of race violates the Equal Protection Clause of the Fourteenth
Amendment to the United States Constitution. U.S.
Const. amend. XIV; Batson v. Kentucky, 476 U.S. 79, 89
(1986);  see also Tex. Code Crim. Proc. Ann. art. 35.261
(Vernon 1989) (codifying the procedure for making a Batson
challenge).  A party challenging an
opposing party=s exercise of peremptory strikes on racial
grounds bears the ultimate burden to persuade the trial court regarding racial
motivation.  Ford v. State, 1
S.W.3d 691, 693 (Tex. Crim. App. 1999). 
The same party bears the initial burden to establish a prima facie case
of racial discrimination by the State against an eligible veniremember.  Id.  However, because the trial court asked the
State to articulate its reasons for the questionable strikes, we need not
consider the preliminary issue of whether appellant made a prima facie showing
of racial discrimination.  See Malone
v. State, 919 S.W.2d 410, 412 (Tex. Crim. App. 1996); Wheatfall v. State,
852 S.W.2d 829, 835 (Tex. Crim. App. 1994); Hill v. State, 827 S.W.2d
860, 865 (Tex. Crim. App. 1992).








The second step in the Batson analysis
requires the proponent of the strike to tender a valid, race-neutral reason for
the strike.  Purkett v. Elem, 514
U.S. 765, 767B68 (1995); Ford, 1 S.W.3d at
693.  Thus, in response to appellant=s objection and
the trial court=s request, the State was required to
articulate a clear and reasonably specific explanation of legitimate reasons
for its challenged strikes.  Sloan v.
State, 809 S.W.2d 224, 226 (Tex. Crim. App. 1991).  Here, the State replied to each of appellant=s five specific
objections.  Appellant concedes the State
had a valid justification to strike all but one of the complained-of potential
jurors.[2]  Therefore, appellant=s ultimate
complaint on appeal is that his Batson challenge should have been upheld
because the State had no valid, race-neutral reason for striking Juror No. 36,
Earline Carey, a member of the alternate jury pool.

The State asserted that its reason for
striking Ms. Carey was that she became the least preferred alternate juror by
process of elimination.  More
specifically, the State explained it had three choices from the alternate
pool.  Juror No. 37 stated he wanted to
be on the jury and Juror No. 38 suggested he was previously on a jury that
found the defendant guilty.[3]  Thus, of the three potential jurors in the
alternate pool, Ms. Carey was the only one the State felt would not be a good
juror.  








Once the State proffered this reason,
appellant had the burden of persuading the trial court that the State=s explanation was
pretextual and that the strike was in fact racially motivated.  Ford, 1 S.W.3d at 693B94.  However, appellant=s counsel failed
to question the State about its race‑neutral explanation or present any
evidence establishing the illegitimacy of its explanation.  We will not overturn a trial court=s finding that the
State=s race‑neutral
explanation was valid unless the record establishes that the finding is clearly
erroneous.  See Williams v. State,
804 S.W.2d 95, 101 (Tex. Crim. App. 1991) (holding there was no Aclear error@ in the trial
court=s ruling on
appellant=s Batson challenge where appellant
failed to provide support in the record to overcome the State=s proffered
race-neutral reasons).  Nothing in the
record suggests the court=s decision was Aclearly erroneous@ in this
case.  Accordingly, we overrule appellant=s first point of
error.

Sufficiency of the Evidence

In appellant=s second and third
points of error, he argues the evidence was both legally and factually
insufficient to support his conviction. 
Specifically, appellant contends the evidence failed to establish he was
either in possession of the cocaine or otherwise knew about, and was in control
of, the substance.  In other words,
appellant contends the evidence failed to prove that anyone but his
co-defendant, Hayward, was responsible for the presence of cocaine in the
vehicle.

When reviewing the legal sufficiency of
the evidence, we must view the evidence in the light most favorable to the
verdict and determine whether any rational trier-of-fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999).  In conducting this review, we do not engage
in a second evaluation of the weight and credibility of the evidence, but only
ensure that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993).  








When reviewing the factual sufficiency of the
evidence, we consider all of the evidence in a neutral light and are required
to determine whether the trier-of-fact was 
rationally justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  There are two
ways in which the evidence may be insufficient. 
Id.  First, when considered
by itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt. 
Id.  Second, there may be
evidence both supporting, and contrary to, the verdict.  Id. 
Weighing all the evidence under this balancing scale, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard could
not have been met and the guilty verdict should not stand.  Id. at 485.  However, we must be mindful that it is within
the province of the trier-of-fact to resolve any conflicts and inconsistencies
in the evidence, and that the trier-of-fact is free to believe or disbelieve
part or all of a witness= testimony.  Jones v. State, 984 S.W.2d 254, 258
(Tex. Crim. App. 1998);  Heiselbetz v.
State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).  Therefore, we must defer to the jurors who
observed the demeanor of the witnesses and avoid substituting our judgment for
theirs.  Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996).








  In
order to establish the offense of unlawful possession of a controlled
substance, the State must show: (1) the accused exercised care, control, or
management over the contraband; and (2) he knew that what he possessed was
contraband.  Tex. Health & Safety Code Ann. ' 481.112(a), (f); Guiton
v. State, 742 S.W.2d 5, 8 (Tex. Crim. App. 1987); Hyett v. State, 58
S.W.3d 826, 830 (Tex. App.CHouston [14th
Dist.] 2001, pet. ref=d). 
Appellant contends the evidence was legally and factually insufficient
to support his conviction because nothing indicates he exercised control over
the cocaine or otherwise proves he knew cocaine was in the vehicle.  To support his contention, appellant points
out: (1) his co-defendant, Hayward, was the driver of the vehicle; (2) Hayward=s mother owned the
vehicle; (3) Hayward was allegedly seen putting something on the floorboard
where the cocaine was found; (4) Hayward had prior drug convictions, whereas
appellant had none; and (5) the only reason appellant fled from officers was
because of the presence of marijuanaCnot cocaine.

When, as here, the defendant is not in
exclusive control of the place where the contraband is found, the State must
show additional affirmative links between the defendant and the contraband.  Martin v. State, 753 S.W.2d 384, 387 (Tex.
Crim. App. 1988); Washington v. State, 902 S.W.2d 649, 652 (Tex. App.CHouston [14th
Dist.] 1995, pet. ref=d); Hurtado v. State, 881 S.W.2d
738, 743 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d).  These affirmative links may be proved by circumstantial
evidence.  Brown v. State, 911
S.W.2d 744, 747 (Tex. Crim. App. 1995). 
The evidence does not need to be so strong that it excludes every other
reasonable defensive theory; rather, it must merely raise a reasonable
inference of the accused=s knowledge and control of the
contraband.  Id. at 748; Hurtado,
881 S.W.2d at 742.  








Factors that may establish the necessary
links include whether: (1) the defendant was present when the drugs were found;
(2) the drugs were found in proximity to, and accessible to, the defendant; (3)
the amount of drugs was substantial; (4) the drugs were in plain view; (5) the
defendant possessed other contraband or drug paraphernalia; (6) the odor of
drugs was present; (7) conduct by the defendant indicated a consciousness of
guilt; (8) the defendant attempted to flee; (9) the defendant owned, or had the
right to possess, the place where the drugs were found; (10) the defendant was
the driver of the automobile in which the drugs were found; (11) the drugs were
found on the same side of the car as the defendant was sitting; (12) the place
where the drugs were found was enclosed; (13) paraphernalia to use the drugs
was in view of, or found on, the defendant; (14) the defendant has a special
connection with the drugs; (15) occupants of the automobile gave conflicting
statements about relevant matters; (16) the defendant was under the influence
of drugs when arrested; (17) affirmative statements connect the accused to the
contraband; (18) the defendant possessed weapons and/or large amounts of
cash.  See Taylor v. State, 106
S.W.3d 827, 831 (Tex. App.CDallas 2003, no
pet.); Wallace v. State, 932 S.W.2d 519, 524 n.1 (Tex. App.CTyler 1995, pet.
ref=d); Gilbert v.
State, 874 S.W.2d 290, 298 (Tex. App.CHouston [1st
Dist.] 1994, pet. ref=d). 
The number of factors present is not as important as the Alogical force@ or the degree to
which the factors affirmatively link the accused to the drugs.  Wallace, 932 S.W.2d at 524 (quoting Gilbert,
874 S.W.2d at 298).  Once these factors
provide the requisite affirmative links, a reasonable inference arises that the
accused knew of the contraband=s existence and
exercised control over it.  Brown,
911 S.W.2d at 747; Washington, 902 S.W.2d at 652. 

The evidence in this case provides ample
support to reasonably link appellant to the cocaine.  Appellant was riding as a passenger in the
vehicle when the cocaine was discovered. 
The package contained nearly a kilogram of cocaine and was in plain view
when officers stopped the vehicle.[4]  The cocaine was on the same side of the car
as appellant and was within appellant=s reach.  In addition to the cocaine, the police also
found marijuana and drug paraphernalia on the floorboard near appellant=s seat.  Finally, the fact that appellant=s seat was lowered
suggests he was attempting to conceal items on the floorboard behind his seatCwhere the cocaine
was foundCrather than merely a comfortable way of
sitting in the seat as appellant contends. 
This furtive gesture indicated a consciousness of guilt.  Appellant also attempted to flee as soon as
he realized officers had located the cocaine, further indicating a
consciousness of guilt.[5]








After reviewing the evidence and
considering the factors outlined above, we find the evidence was both legally
and factually sufficient to affirmatively link appellant to the cocaine.  See Hyett, 58 S.W.3d at 831B32.  We do not believe the jury=s finding of guilt
was either irrational or otherwise unsupported by evidence beyond a reasonable
doubt.  Accordingly, we overrule
appellant=s second and third points of error.

Admissibility
of Declaration Against Interest

In his fourth point of error,
appellant contends the trial court improperly refused to admit hearsay
statements allegedly made by Hayward and offered through the testimony of
appellant=s mother, Hattie Davis, and one of
Hayward=s friends, Gregory Taylor.  At trial, Ms. Davis testified that appellant
and Hayward had been friends for five or six years.  She further stated that, after the two
individuals were arrested, Hayward called her from the Harris County Jail.  Appellant then sought to elicit testimony
about the contents of the phone conversation and asked Ms. Davis to testify as
to what Hayward said.  The State objected
on hearsay grounds.  Appellant argued the
conversation was admissible as a statement against penal interests, an
exception to the general hearsay rule under Texas Rule of Evidence 803(24).[6]  

The
court then asked for corroborating evidence and ordered appellant to make an
offer of proof.  Outside the presence of
the jury, appellant then offered the following:

[Appellant=s
Counsel]:  Hattie Davis, mother of
[appellant], knows, recognizes Mr. Hayward, the co-defendant=s voice, saw the caller I.D. from Harris County.  Mr. Hayward called her and said, Look, I will
take care of you and [appellant] financially if he will take the case for
me.  He has no felony records, whereas I
am a felon.  So, I can=t get hit for this.








[The
Court]:  Okay.

[Counsel]:  Then a
gentleman by the name of Gregory Taylor went up and visited with Mr. Hayward
and Mr. Hayward told Mr. Taylor face-to-face that, Look, I am an ex-con.  I can=t take this case.  You get [appellant] to take this case for me
because he doesn=t have a record and I will hire him a hired lawyer just like
mine.

Appellant argued the second witness
provided sufficient corroboration for the testimony to be admissible.  The State reiterated its objection on hearsay
grounds and also claimed the conversation was irrelevant and overly
prejudicial.  The trial court agreed and
sustained the State=s objection.

A
trial court has broad discretion over the admission or exclusion of evidence,
including hearsay statements under Rule 803(24).  Bingham v. State, 987 S.W.2d 54, 57
(Tex. Crim. App. 1999).  We will not
reverse the trial court=s decision unless there was clear abuse of discretion, i.e.,
its decision was outside the Azone of reasonable disagreement.@ 
Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim. App. 2001).  Deciding whether a hearsay statement is
admissible in accordance with Rule 803(24) requires a two‑step
inquiry.  Bingham, 987 S.W.2d at
57.  First, the court must determine
whether the statement in question tends to expose the declarant to criminal
liability.  Id.  Second, the court must determine if there are
corroborating circumstances that clearly indicate the trustworthiness of the
statement.  Id.  A hearsay statement is inadmissible
unless both of these criteria are satisfied. 
Id.








In reviewing the trial court=s decision, we must first determine
whether Hayward=s statements were sufficiently self-inculpatory to satisfy
Rule 803(24).  In a phone conversation
with appellant=s mother, Hayward promised to provide
the family with financial assistance if appellant agreed to Atake the case.@ 
In a similar conversation with a friend, Hayward allegedly promised to
hire an attorney for appellant if appellant would Atake this case for me.@ 
In terms of inculpating Hayward, neither of these statements constitute
a clear admission of guilt.  Likewise,
neither of the statements indicates Hayward was taking responsibility for the
cocaine.  Instead, Hayward=s comments suggest an attempt to
shift to appellant all responsibility for the cocaine possession.  As the United States Supreme Court explained
in Williamson v. United States, Athe confessions of arrested
accomplices may be admissible if they are truly self‑inculpatory,
rather than merely attempts to shift blame or curry favor [with the
authorities].@ 
512 U.S. 594, 603 (1994) (emphasis added).  Moreover, the Texas Court of Criminal Appeals
relied on Williamson in holding that Rule 803(24) A>does not allow admission of non‑self‑inculpatory
statements, even if they are made within a broader narrative that is generally
self‑inculpatory.=@ 
Miles v. State, 918 S.W.2d 511, 515 (Tex. Crim. App. 1996)
(quoting Williamson, 512 U.S. at 600B01). 
Therefore, even if we believed that Hayward=s statement were part of a broader
implication of guilt, the statements themselves are not sufficiently
self-inculpatory to be admissible under Rule 803(24).  








Furthermore, while Hayward=s statements may have impliedly been
against his penal interest, declarations that he would provide financial
benefits to appellant or hire appellant an attorney if he agreed to Atake the case@ are not Aso far tended to subject the
declarant to civil or criminal liability . . . that a reasonable person in
declarant=s position would not have made the
statement[s] unless believing [them] to be true.@ 
Tex. R. Evid. 803(24);
see also Guidry v. State, 9 S.W.3d 133, 148B49 (Tex. Crim. App. 1999) (finding
statements in a murder case inadmissible under Rule 803(24) because they
inculpated the defendant as the primary actor, even though the statements often
used the term Awe@ when describing the criminal acts); Mendez
v. State, 56 S.W.3d 880, 887B90 (Tex. App.CAustin 2001, pet. ref=d) (explaining that a co-defendant=s statement that is Abroadly self‑inculpatory may
nevertheless be inadmissible if it is blame shifting@ and that Aeven statements that expose the
declarant to potential legal liability may be inadmissible if they
incriminate the defendant to a greater degree@) (emphasis in original);
Zarychata v. State, 961 S.W.2d 455, 458B59 (Tex. App.CHouston [1st Dist.] 1997, pet. ref=d) (holding an accomplice=s attempt to shift blame was
inadmissible under Rule 803(24) because it was an attempt to minimize the
declarant=s own role, not an acceptance or
statement implicating the declarant=s penal interests).  Since Hayward=s statements were an attempt to shift
the blame to appellant and minimize Hayward=s own criminal liability, they were
not statements against his penal interest as defined under 803(24).  Accordingly, the trial court did not abuse
its discretion in excluding the statements.

Assuming arguendo that the statements sufficiently
incriminated Hayward, we are next required to determine if there were
corroborating circumstances that clearly indicated the trustworthiness of the
statements.[7]  There is no definitive test by which to gauge
the existence of corroborating circumstances. 
Davis v. State, 872 S.W.2d 743, 748B49 (Tex. Crim. App. 1994).  Instead, the focus of the inquiry should be
on verifying, to the greatest extent possible, the trustworthiness of the
statement so as to avoid the admissibility of a fabrication.  Id. 
All evidence should be considered in determining whether there are
corroborating circumstances clearly indicating the trustworthiness of a
statement against interest.   Cofield
v. State, 891 S.W.2d 952, 955 (Tex. Crim. App. 1994); Cunningham v.
State, 877 S.W.2d 310, 313 (Tex. Crim. App. 1994).  








Generally courts may consider specific factors to determine
the reliability of a statement, including: (1) whether the guilt of the
declarant is inconsistent with the guilt of the accused;  (2) whether the declarant was so situated
that he might have committed the crime; 
(3) the timing of the declaration and its spontaneity;  (4) the relationship between the declarant
and the party to whom the declaration was made; and (5) the existence of
independent, corroborative facts. 
Bingham, 987 S.W.2d at 58; Davis, 872 S.W.2d at 748B49. 
However, as the United States Supreme Court has explained Aa codefendant=s confession is presumptively
unreliable as to the passages detailing the defendant=s conduct or culpability because
those passages may well be the product of the codefendant=s desire to shift or spread blame,
curry favor, avenge himself, or divert attention to another.@ 
Lee v. Illinois, 476 U.S. 530, 545 (1986) (emphasis added).  Therefore, a very high burden is placed on
the party seeking admission of the statement to establish the necessary
corroborating circumstances, particularly where the statements attempt to shift
blame.  Davis, 872 S.W.2d at 749;
White v. State, 982 S.W.2d 642, 649 (Tex. App.CTexarkana 1998,  pet. ref=d); Jefferson v. State, 909
S.W.2d 247, 251 (Tex. App.CTexarkana 1995, pet. ref=d).

Here, nothing about Hayward=s statements rebut the presumption of
inherent unreliability as it pertains to appellant=s culpability.  Considering Hayward=s alleged prior drug convictions and
the fact that appellant had none, a reasonable person in Hayward=s position might have many motives
for making such statements.  It is
certainly conceivable that a person might make a statement in hopes that the
co-defendant takes the case and is found guilty.  Then, the declarant can seek to completely
avoid liability by using his co-defendant=s conviction as proof of his own
innocence.  Accordingly, nothing about
Hayward=s statements rebut the presumption of
unreliability.  See  Mendez, 56 S.W.3d at 890 (AA statement that is broadly self‑inculpatory
may nevertheless be inadmissible if it is blame shifting.@).

Moreover, we can examine the five factors  outlined above to support the trial court=s decision to exclude Hayward=s statements.  First, Hayward=s statements were obviously not
intended by him to be a statement against penal interest.  To the contrary, Hayward was attempting to
demonstrate appellant=s guilt.  Appellant, on
the other hand, sought to introduce Hayward=s statements to show that Hayward
should be the sole party bearing responsibility for possessing the
cocaine.  Both appellant and Hayward had
self-serving motives for making or attempting to offer the statements.  Moreover, there is nothing in the record to
suggest that Hayward and appellant did not jointly possess the contraband or
that the guilt of one is necessarily inconsistent with the guilt of the
other.  Thus, we find no indicia of
reliability to satisfy the first factor. 









At best, the second factor proves nothing about the
reliability of Hayward=s statements.  Hayward
was so situated that he might have been the primary actor in the offense but
appellant was equally situated that he could have been the primary actor.  The third factor, the timing of Hayward=s declaration and its apparent
spontaneity, does not indicate any inherent trustworthiness.  The declaration was made from jail after
Hayward had been arrested for the offense. 
Thus, Hayward had a personal interest in making the statements, viz,
persuading appellant to take the blame so he [Hayward] could get out of
jail.  Fourth, the relationships between
the declarant and the parties to whom the declarations were madeCappellant=s mother and Hayward=s friendCseem to indicate very little.  On one side, appellant=s mother would have an interest in
testifying about the statements because it might provide some assistance to her
son=s defense.  On the other hand, Hayward=s friend had an interest in
convincing appellant to take responsibility for the crime so there would be no
case against Hayward.  Finally,
independent facts tend to suggest the statements are not inherently
reliable.  Because of Hayward=s prior drug convictions, he had an
apparent motive to implicate appellant. 
Therefore, no circumstances clearly indicate the trustworthiness
of Hayward=s statements.  

Given the conflicting factors and the presumption of
inadmissibility of unproven hearsay statements, we cannot say the trial court=s decision was outside the zone of
reasonable disagreement.  Accordingly, we
hold the trial court did not abuse its discretion in excluding the statements
and overrule appellant=s fourth point of 
error.

The judgment of the trial court is affirmed.

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment
rendered and Opinion filed November 3, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  The trial
court took judicial notice that appellant and all five of these veniremen were
African-American.  In addition, appellant
points out on appeal that the State also struck four other minority members of
the venireCnumbers 4, 10, 15, and 17.  However, appellant=s Batson complaint at trial was limited to an
allegation that the State struck all the African-American veniremen.  He did not challenge the peremptory strikes
of minority jurors who were not African-American, i.e., jurorsC4, 10, 15, and 17. 
Thus, we will disregard his complaint on appeal as to those four
individuals.  See generally Batiste v.
State, 888 S.W.2d 9, 17 n.5 (Tex. Crim. App. 1994) (explaining that a Batson
motion may be waived by Afailure to object to prosecutorial use of peremptory
challenges to exclude veniremen on the basis of race@).





[2]  Specifically,
the State provided the following valid, race-neutral reasons for its peremptory
strikes.  First, the State explained
Juror 19 had a brother who was charged with capital murder, which is a
permissible reason to strike a prospective juror.  Dorsey v. State, 940 S.W.2d 169, 175
(Tex. App.CDallas 1996, pet. ref=d); Adams
v. State, 862 S.W.2d 139, 145 (Tex. App.CSan
Antonio 1993, pet. ref=d).  Second, the
State said it struck Juror 25 because she had convictions for traffic tickets
and bad checks, and it struck Juror 34 because she was on deferred adjudication
for theft.  A prior arrest or conviction
is a valid, race-neutral reason for striking a juror.  Harris v. State 996 S.W.2d 232, 235B36 (Tex. App.CHouston
[14th Dist. 1999, no pet.); Thornton v. State, 925 S.W.2d 7, 11 (Tex.
App.CTyler 1994, pet. ref=d); Frierson
v. State, 839 S.W.2d 841, 853 (Tex. App.CDallas
1992, pet. ref=d).  Finally,
the State explained Juror 30 said during voir dire she believed the minimum
punishment of 15 years was excessive.  A
prospective juror=s reservation about the range of punishment is a
permissible reason to strike the juror.  Green
v. State, 839 S.W.2d 935, 939 (Tex. App.CWaco
1992, pet. ref=d).  Because the
State provided valid, race-neutral reasons to strike each of these four jurors,
and appellant does not contest the validity of the State=s explanations, we will not consider these four jurors
in determining whether the court erred in overruling appellant=s Batson challenge.





[3]  A juror=s prior service is relevant in determining whether the
juror would be favorable to a particular side and, therefore, may constitute a
race-neutral consideration.  Levy v.
State, 749 S.W.2d 176, 178 (Tex. App.CHouston
[14th Dist.] 1988, pet. red=d). 





[4]  Testimony
indicated such a substantial amount of cocaine would be worth approximately
$100,000 on the street.





[5]  Appellant
argues he took flight solely because of the marijuana and that the presence of
cocaine had no impact on his decision to run. 
However, the evidence proves otherwise. 
The arresting officers testified that appellant did not start to run
until they voiced
their observations about the cocaine package. 
Therefore, the more logical explanation for appellant=s behavior, as apparently
determined by the jury, is that he knew
the contents of the package and decided to run only after the cocaine had been
discovered. 





[6]  Rule 803(24)
defines a Astatement against interest@ as:

A
statement which was at the time of its making so far contrary to the declarant=s pecuniary or proprietary interest, or so far
tended to subject the declarant to civil or criminal liability, or
to render invalid a claim by the declarant against another, or to make the
declarant an object of hatred, ridicule, or disgrace, that a reasonable person
in declarant=s position would not have made the statement unless
believing it to be true. In criminal cases, a statement tending to expose
the declarant to criminal liability is not admissible unless corroborating
circumstances clearly indicate the trustworthiness of the statement.

Tex. R. Evid. 803(24) (emphasis added).





[7]  Although the
State disagrees on appeal, the record shows the prosecutor conceded at trial
the inculpatory nature of the statements. 
Moreover, the trial court agreed because it specifically asked appellant
to provide evidence to corroborate the statements.  Therefore, we will address the second step in
the Rule 803(24) analysis.