**Clifford Wayne GARDNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–88–01117–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 21, 1989.
Discretionary Review Refused
March 14, 1990.

George McCall Secrest, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Harris Co., Alan Curry, Jana Miller, Asst. Dist. Attys., Houston, for appellee.

Before WARREN, DUGGAN and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

A jury found appellant guilty of burglary of a motor vehicle with intent to commit theft. After finding one enhancement paragraph true, the jury assessed punishment at 20 years confinement and a fine of $2,500.

The trial commenced on November 21, 1988, but after jury selection and presentation of some evidence, the judge declared a mistrial, and impaneled another jury. The second trial concluded the next day.

In his sole point of error, appellant contends that the trial court committed reversible error by overruling his "Batson" motion.[1]

The venire from which the second jury was selected consisted of 50 people, four of whom were black. Two of the black venirepersons were seated on the jury, and the prosecutor exercised peremptory challenges to exclude the other two. Before the jury was sworn and before the venire panel was discharged, the following transpired:

DEFENSE COUNSEL: I have a Motion, your Honor.

THE COURT: Please come right up here.

THE COURT: Okay. The Motion is timely made. Go right ahead.

DEFENSE COUNSEL: Thank you, Judge. I have a Motion based on Batson vs. Kentucky in regard to the jury panel, and would show to the Court, first of all, I have a client who is a member of a cognizable racial group. Secondly, the prosecutor has exercised peremptory challenges to a member of that racial group, and would show to the Court that from the venire Nos. 8, 22, 30, and 32 are black, and No. 8 and No. 32 are on the panel. Nos. 22 and 30 were—the prosecutor used strikes against those two, and I would draw the Court's attention to the fact the prosecutor never directly examined those jurors, therefore, there's nothing in the record to show why those two jurors should not be fit for service, and would argue that we have made a prima facie showing of discriminatory challenges.

THE COURT: Ms. Miller, you may proceed on Jurors 22 and 30.

PROSECUTOR: With respect to Juror No. 22, once again, your Honor, my strategy, if you will, was to select primarily older jurors, although I made some exceptions in this particular case for younger jurors who had professions which I felt were stable and would be the type of person I was looking for. However, I would [sic] looking primarily for older jurors who were in a profession or showed some evidence of educational background. Ms. Jackson put on her questionnaire that she was a part owner of an address, which indicated to me either she was confused about what the question was, or—but it indicated possible confusion with respect to what would be required of a juror. In addition, in response to one of Ms. McGregor's questions regarding whether or not the defendant—I think it was with respect to the defendant's failure to testify, her answer was rather timid, and I was looking again for a stronger juror, is what I was looking for, as far as punishment. With respect to No. 30, Mr. Gooch, again he was a younger member of the jury panel. His age was 32. He was employed by the City of Houston, but did not put down in what capacity. He had kind of a strange look on his face when I was explaining the difference between the three types of offenses, burglary of a motor vehicle, auto theft and unauthorized use of a motor vehicle, which indicated to me he might possibly have some difficult [sic] understanding the legal concepts involved. In addition, his response to Ms. McGregor's question about whether or not the defendant would testify, if he would have any problem finding him not guilty and his response was

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

enthusiastic, which would indicate to me he was pro-defense.

THE COURT: Your Motion is Denied.

■ In *Keeton v. State*, 749 S.W.2d 861 (Tex.Crim.App.1988), the Court of Criminal Appeals, following *Batson v. Kentucky*, set out the procedure for challenging the State's peremptory strikes on the basis of racial discrimination. First, the defendant must make a prima facie showing that the peremptory challenges were used by the State to discriminate against black venire-persons, which creates a presumption of discrimination. *Keeton*, 749 S.W.2d at 867. The burden then shifts to the State to articulate legitimate, non-discriminatory reasons for the challenges, which relate to the particular case to be tried. *Id.* at 862. If the prosecutor articulates racially neutral reasons for the strikes, the defendant may offer evidence showing that the prosecutor's reasons are merely a sham or pretext. *Id.* at 868. The trial judge is the factfinder and, as such,

> must necessarily gauge the credibility of [the prosecutor's] testimony, determined in part, at least, by the plausibility of his explanation. This task is no different in principle than any other factfinding enterprise.

*Tompkins v. State*, 774 S.W.2d 195, 202 n. 6 (Tex.Crim.App.1987), *aff'd*, — U.S. —, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); *see also Keeton*, 749 S.W.2d at 865–66, 868. We will not substitute our judgment of the witness's credibility and evidentiary weight for that of the factfinder. *Tompkins*, 774 S.W.2d at 202. "A reviewing court should reverse [the trial court's] findings only when they are not supported by sufficient evidence or, as we often say, for an 'abuse of discretion.'" *Id.* at 202–03 n. 6A.

■ In reviewing the record, the appellate court should consider the evidence in the light most favorable to the trial court's rulings and determine if those rulings are supported by the record. *Keeton v. State*, 749 S.W.2d at 870.

■ The prosecutor stated that she was primarily looking for older jurors, even though she made some exceptions in this case for younger jurors who had stable professions. It is acceptable to look for older jurors. *Townsend v. State*, 730 S.W.2d 24, 26 (Tex.App.—Texarkana 1987, no pet.). The prosecutor believed that one of the black venirepersons was confused because she wrote on her questionnaire that she was a part owner of an address. This confusion indicated to the prosecutor future problems with "what would be required of a juror." The prosecutor also thought the juror was not strong enough on punishment because the juror responded timidly to a question by defense counsel regarding appellant's failure to testify. It is acceptable to challenge a juror based on the way that juror reacts to defense counsel. *Townsend*, 730 S.W.2d at 26.

■ The second black venireperson who was struck was also younger than the prosecutor preferred, and was employed by the City of Houston in an unknown capacity. The prosecutor thought this venireperson had a strange look on his face when the prosecutor explained the difference between three types of offenses, indicating he had difficulty understanding the legal concepts involved. Also, the juror responded enthusiastically to defense counsel's question regarding appellant's failure to testify, which indicated to the prosecutor that the juror was pro-defense.

The fact that two black jurors remained on the panel is also a factor to consider. *Townsend*, 730 S.W.2d at 26. The Court of Criminal Appeals offered illustrations of the types of evidence that can be used to overcome the presumption of discrimination and show neutrality. One of these was if "there is no evidence of a pattern of strikes used to challenge black jurors; e.g., having a total of 6 peremptory challenges, the state used 2 to strike black jurors and 4 to strike white jurors, and there were blacks remaining on the venire." *Keeton*, 749 S.W.2d at 868. Here, the State had 10 peremptory challenges, used two on blacks, eight on non-blacks, and two blacks remained on the jury.

In view of all of the above, we find the State provided racially neutral explanations

for its peremptory strikes, and overcame the presumption of discrimination.

At that point, appellant had the burden of persuading the trial judge, by a preponderance of the evidence, that the allegations of purposeful discrimination were true in fact and that the prosecutor's reasons were merely a sham or pretext. *Tompkins*, 774 S.W.2d at 202. However, after the State offered its neutral explanations, appellant did not cross-examine the prosecutor nor offer any additional evidence or arguments to rebut the neutral explanations.

■ For the first time, on appeal, appellant offers a comparison of the white venirepersons with the two black venirepersons struck by the State. Appellant points out that some venirepersons under the age of 40, who weren't obviously members of a "stable profession," were not struck by the State; there was no evidence that some of the chosen jurors had an "educational background"; some venirepersons over age 40 were struck by the prosecutor; other venirepersons gave the same responses to defense counsel's questions as the two struck venirepersons. Appellant also argues on appeal that the prosecutor should have asked the two struck black venirepersons direct questions if the prosecutor was bothered by anything she had observed about them.

This Court addressed the same situation in *Vargas v. State*, 781 S.W.2d 356 (Tex. App.—Houston [1st Dist.], 1989, pet. filed) (not yet reported). In that case, as here, the appellant did nothing further to prove his allegations that the State exercised its peremptory challenges in a racially discriminatory manner, or that the prosecutor's neutral explanations were merely pretextual. He did not cross-examine the prosecutor, introduce any documentary evidence, or offer any testimony of his own. In addition, there, as here, the appellant did not attempt to compare the challenged black venirepersons with any of those venirepersons who were not challenged by the prosecution. However, in his brief on appeal, appellant there, as here, offered, for the first time, a comparison of the white venirepersons against whom the State did not exercise a peremptory strike, with those black venirepersons struck by the State. This Court held that rebuttal evidence will not be considered for the first time on appeal. *See also Tompkins v. State*, 774 S.W.2d at 203 n. 6A ("because the trial judge was not urged to make, and did not make, a finding based upon a comparison analysis in deciding the issue whether the prosecutors' neutral explanations were rebutted or impeached at the "Batson" hearing with evidence that unchallenged white veniremen also possessed the same purportedly undesirable characteristics, we do not consider this circumstance in reviewing the trial judge's findings in this cause").

Because appellant did not offer any additional evidence or argument to the trial court to rebut the State's neutral explanations, and considering the evidence in the light most favorable to the trial court's rulings, we find the record supports the trial judge's denial of appellant's "Batson" motion.

We overrule appellant's point of error.

■ The State brings a cross-point of error, contending that the trial court erred in granting appellant's motion for mistrial in the first trial of this case. The State does not show that the ruling has any bearing on this appeal, but urges this Court to sustain its cross-point "in order to provide the bench and bar with instruction as to the applicable law with respect to the admissibility of oral statements made by an accused; and ... to instruct the trial court below as to the incorrectness of his ruling." Appellate courts do not issue advisory opinions.

> The law is settled in this state that courts are created not for the purposes of deciding abstract or academic questions of law or to render advisory opinions, but solely for the judicial determination of presently existing disputes between the parties in which an effective judgment can be rendered.

*University Interscholastic League v. Jones*, 715 S.W.2d 759, 761 (Tex.App.—Dal-

las 1986, writ ref'd n.r.e.), *cert. denied,* 484 U.S. 821, 108 S.Ct. 81, 98 L.Ed.2d 43 (1987).

We overrule the State's cross-point of error.

The judgment is affirmed.