AFFIRM; Opinion issued November 14, 2012



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-10-00528-CR

## GREGORY DEANGELO GARNER A/K/A GREGORY UNDERWOOD, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F09-51267-NI**

# MEMORANDUM OPINION

Before Justices Bridges, Richter, and Murphy
Opinion By Justice Bridges

Appellant Gregory Deangelo Garner a/k/a Gregory Underwood appeals his murder conviction and accompanying sentence of 35 years' imprisonment. In two issues, appellant contends the trial court erred in: (1) allowing evidence suggesting appellant immediately fled after the offense and (2) preventing the defense from impeaching a witness who left a false impression with the jury about the deceased. We affirm.

## Background

At trial, Amber Moran testified she knew both appellant and Brandon Gibbs, the victim. All three lived in a neighborhood where "everybody knew everybody." Moran stated that, on the evening before the murder, she, appellant and some friends came upon Gibbs, who confronted

appellant about a police raid on Gibbs's apartment a week or so earlier. A "little altercation" began concerning Gibbs' "door being kicked in over there in the apartments" by a SWAT team about two weeks earlier. Gibbs and appellant argued. Gibbs was "kind of hot," and he asked appellant questions about "selling dope" and told appellant "don't come over here no more." Appellant said it had "nothing to do with him." Moran testified that Gibbs wanted to "fist fight" appellant, but appellant was "trying to walk away." Appellant was "shook up" and told Gibbs to leave him alone and that if "you keep messing with me, dawg, I'm going to kill you." Moran testified she "didn't think nothing of" this statement because she had said things like that when she got mad. At the time, Moran "brushed it off" and told appellant to "come on" and "let it go," and the confrontation ended.

The next morning, February 7, 2009, Moran was walking to the store alone when she saw appellant and Gibbs arguing. Moran was going to "do the same thing [she] did the night before" and tell appellant to "chill out." Moran testified appellant pulled a "small" gun out of his jacket and shot Gibbs. Appellant's hand was shaking as he pulled out the gun. Moran testified Gibbs "didn't have no gun," but he said, " [S]o now you're going to shoot me. . . shoot me, shoot me. . . you want to kill me; kill me." Appellant's first bullet hit Gibbs under the arm. Gibbs said, "[M]an, this nigger just shot me" and "did some type of turn." Appellant fired the gun again, and this time Moran did not see where Gibbs was hit. Later, Moran thought it "looked like it was somewhere along the back of his neck." Moran heard a third shot, but she did not know where the third bullet went. Moran assumed Gibbs was "trying to run back to the house," but he fell to the ground. Appellant "took off running."

Other residents of the apartment complex, Robin Fife and Arma Jean Woods, testified they heard arguing outside their apartments. Both residents, along with Clifton Lee Turner, who was visiting friends at the time of the shooting, testified they also heard gun shots. When Fife came

outside, she saw a person lying on the ground.

Dallas police officers found two shell casings at the scene. An ambulance transported Gibbs to the hospital, where he was pronounced dead as a result of multiple gunshot wounds. The autopsy revealed the two slugs were fired from a single weapon.

A jury convicted appellant of murder, and the trial court sentenced him to 35 years' imprisonment.

## Analysis

In his first issue, appellant argues the trial court erred in allowing flight evidence. Specifically, appellant complains of the admission of evidence that he had left the Dallas area sometime after the date of the offense, had missed a "mandatory" (probation) appointment four days later, and was arrested several weeks later in St. Louis at a homeless shelter.

We review a trial court's ruling under the rules of evidence for an abuse of discretion. *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998). The trial court must be given wide latitude to exclude or, particularly in view of the presumption of admissibility of relevant evidence, *not* to exclude misconduct evidence as it sees fit. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (emphasis in original). So long as the trial court operates within the boundaries of its discretion, an appellate court should not disturb its decision. *Id.*

The record reflects the trial court, during a recess in the proceedings and outside the presence of the jury, held "a little hearing on this proffer of testimony of flight." During the hearing, defense counsel made the following objection:

> First of all, if it's admissible, it has to be noticed under 404(b). I have not received any such notice. There is no evidence that Gregory was anywhere but where he was supposed to be, as far as not fleeing on any day before he's arrested in St. Louis. We don't know where he was. The State can't show that . . . .They can't even show that he was not where he was supposed to be at that time. Beyond, he's -- the notice, the

lack of notice to me, I'm unable to put on a proper defense because I will bring in United States Marshal -- a Deputy United States Marshall [sic] from St. Louis to testify he was living at that time in St. Louis under the name of Garner, under his own date of birth, under his own Social Security number, et cetera, et cetera. I can't do that. I can't reasonably anticipate this is going to be done unless I'm given 404(b) notice. Any probative value of this is outweighed by the prejudice. Beyond the Constitutional provisions of the Fifth, Sixth and Fourteenth Amendments, Article 1, Section 9 and Article 1, Section 10, of the Texas Constitution. I am not able to render effective assistance under those circumstances when I don't get notice of what they intend to do in that regard. It simply is not something for a jury to decide what the importance of that is until you do your gatekeeper function. The gatekeeper function is 403, 404 requirement and I didn't get any notice of this. I am entitled to notice. I've asked for it. I was supplied other things. I was not supplied that. It requires you to draw the inference on top of the inference to get there, at best. I didn't have a chance to read this Burks case yet. I don't know the circumstances. It's about 30 pages. I just was handed it.

We construe counsel's objection to be lack of notice under rule 404(b), depriving him of the ability to provide effective assistance of counsel, and unfair prejudice under rule 403. *See* TEX. R. EVID. 403, 404(b). The trial court overruled appellant's objections.

At trial, the State called Denise Kuenstler without identifying her as appellant's probation officer. Kuenstler testified appellant appeared for scheduled appointments on December 30, 2008, January 30, 2009, and February 3, 2009. On February 3, appellant was told to return the next day but failed to do so. However, he did appear on February 5, 2009. Appellant next had a mandatory meeting scheduled with Kuenstler on February 11, 2009, but he did not appear. Kuenstler testified that she did not hear from appellant after February 5, 2009. Kuenstler further testified that appellant stated he was homeless at the January 30, 2009 appointment. The issue of "flight" was not raised during Kuenstler's testimony.

Following Kuenstler's testimony, the State introduced into evidence a two-page report by the U.S. Marshal's office. Appellant had "no objection" to the introduction of the report. The report showed federal marshals were seeking appellant under the name of "Gregory Underwood." The

Marshals determined appellant was accessing his MySpace account from a computer at an address associated with the Office for Developmental Disability Resources in St. Louis, Missouri. The Marshals contacted Candice Alridge, the supervisor of a homeless shelter at the address, and showed Alridge and her assistant Kim Busby a picture of appellant. Busby immediately recognized appellant's photograph as "Gregory Garner." Busby and Alridge pulled up "Garner's" photograph, which was very similar to the photograph the Marshals had for "Underwood." The social security number and date of birth appellant gave to the shelter were the same as the Marshals had for "Underwood."

Busby stated appellant had been coming to the shelter regularly since the end of March 2009, and he used the internet, took showers, did laundry, and slept at the shelter. Appellant was sometimes accompanied at the shelter by Chris Jackson, whom Busby identified as either a close friend or cousin of appellant. The Marshals left their contact information and left the shelter. The next day, Busby called and said appellant was in the shelter's waiting room. The Marshals went to the shelter and arrested appellant, who attempted to identify himself as "Gregory Garner" but gave his mother's and father's information which was the same as that of the "Underwood" fugitive they were seeking. For several minutes, appellant attempted to falsely identify himself, but he admitted he is known as both "Gregory Underwood" and "Gregory Garner." Again, during the State's presentation of the report, the prosecutor did not refer to appellant's "flight."

On appeal, appellant complains the trial court erred because: (1) the State failed to provide notice of its use of the evidence of his flight under rule 404(b) and (2) the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under rule 403. We disagree.

Rule 404(b) prohibits the admission of extraneous offense evidence to prove an individual's

character or to show action in conformity with that character. TEX. R. EVID. 404(b). This limitation is not based on legal relevance; rather, the evidence is inherently prejudicial, has a tendency to confuse the issues, and forces the accused to defend himself against uncharged crimes in addition to the charged offense. *Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005). Yet extraneous offense evidence may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b).

Under rule 403, relevant evidence of extraneous offenses may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. *See* TEX. R. EVID. 403; *Montgomery*, 810 S.W.2d at 389. In considering a rule 403 challenge, courts must balance (1) the inherent probative force of the evidence – that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation, with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, commonly, an emotional one, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). We should reverse the trial court's balancing determination "rarely and only after a clear abuse of discretion." *Montgomery*, 810 S.W.2d at 392.

Contrary to appellant's argument, the evidence admitted at trial did not refer to appellant's "flight" nor demonstrate appellant had fled Texas. Rather, the evidence showed appellant stated he was homeless at a January 30, 2009 appointment with Kuenstler, went to a homeless shelter in St.

Louis, and was arrested there. Appellant had given his correct date of birth and social security number at the shelter, and he was sometimes in the company of Jackson, a close friend or cousin. The evidence did not show Kuenstler was appellant's probation officer or that appellant was under any legal obligation to meet with her. The only mention of "flight" appears to be the trial court's use of the term at the beginning of a hearing outside the presence of the jury. Thus, the evidence presented at trial merely showed the circumstances surrounding appellant's arrest and did not characterize appellant's presence in St. Louis as the result of his "flight." The circumstances surrounding a defendant's arrest are generally admissible. *Couret v. State*, 792 S.W.2d 106, 107 (Tex. Crim. App. 1990); *Maddox v. State*, 682 S.W.2d 563, 564 (Tex. Crim. App. 1985). This rule is restricted by the same test as any extraneous matter: the evidence must be relevant to a material issue in the case and the probative value must outweigh the prejudicial value. *Couret*, 792 S.W.2d at 107.

Here, Moran testified she saw appellant shoot Gibbs, who died from his wounds. The evidence showed appellant missed a scheduled appointment with Kuenstler four days after the shooting. Kuenstler did not see appellant thereafter. Nearly two months after the shooting, appellant began staying at the shelter in St. Louis using his own social security number and date of birth. Marshals tracked appellant to the shelter by tracking his MySpace account and arrested him at the shelter. This evidence was relevant to show an interruption in appellant's attendance at meetings with Kuenstler following the shooting. However, this evidence did not have any tendency to suggest the jury make its decision on an improper basis, confuse or distract the jury from the main issues, or be given undue weight by the jury. *See Gigliobianco*, 210 S.W.3d at 641-42. The State did not identify Kuenstler as appellant's probation officer and did not develop evidence appellant was on probation. Further, the evidence showed appellant had told Kuenstler he was homeless, and he was

arrested at a homeless shelter that happened to be in St. Louis. The State presented no evidence that appellant's movement from Texas to St. Louis constituted "flight." *See id.*

Even if we were to construe the evidence admitted at trial as evidence of "flight," appellant's flight is not an "extraneous offense" under rule 404(b). *See Harper v. State*, 930 S.W.2d 625, 630 (Tex. App.–Houston [1st Dist.] 1996, no pet).[1] Rather, flight evidence is relevant and admissible to show appellant's consciousness of guilt. *See Cantrell v. State*, 731 S.W.2d 84, 92 (Tex. Crim. App. 1987). Flight evidence also presents circumstances relevant to prove the controlling facts of the case rather than an extraneous offense under rule 404(b). *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) (evidence of flight admissible as a circumstance from which an inference of guilt may be drawn). Accordingly, the State was not required to comply with the notice provisions of 404(b). *See Harper*, 930 S.W.2d at 630.

Further, even if the notice provisions of 404(b) applied, we would still conclude the trial court did not err in admitting evidence of appellant's flight prior to his arrest because the details surrounding appellant's arrest were admitted elsewhere without objection from appellant. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). *See also* TEX. R. APP. P. 33.1(a); *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (To preserve error, a party must make a timely and specific objection or motion at trial, and there must be an adverse ruling by the trial court.).

Next, we consider appellant's argument that the probative value of the "flight" evidence was substantially outweighed by the danger of unfair prejudice. Again, because the evidence of appellant's location came in elsewhere without objection, he has waived this objection. *See*

---

[1] Although the *Harper* court cites rule 404(b) under the old Texas Rules of Criminal Evidence, rule 404(b) is substantially the same in the current Texas Rules of Evidence.

*Ethington*, 819 S.W.2d at 858; *Fuller*, 253 S.W.3d at 232. However, even if we were to address this objection, we would conclude this argument is also without merit. Because evidence of flight supports an inference of guilt, a jury could reasonably conclude appellant's failure to appear on the designated date after the murder was probative of his participation in the offense. *See Bigby*, 898 S.W.2d at 883. Appellant argued he was falsely identified as the perpetrator of the crime and thus, additional evidence, including location evidence, was probative to showing appellant's consciousness of guilt. Further, in light of other evidence before the jury without objection (showing appellant was arrested in St. Louis, that he initially denied who he was to law enforcement officials, and then denied a connection to Dallas), we conclude the evidence likely had little potential to unfairly prejudice the jury against appellant. *See Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). Accordingly, the trial court did not abuse its discretion in admitting evidence of appellant's location. *Angleton*, 971 S.W.2d at 67; *Harper*, 630 S.W.2d at 630. We overrule appellant's first issue.

In his second issue, appellant contends the trial court reversibly erred in preventing the defense from impeaching a witness who left a false impression with the jury about the deceased victim. At trial, the State called Bridgette Gibbs, who explained the victim was her oldest son. She testified as follows: "Well, Brandon was Brandon. He didn't bother anybody. He helped raise his brothers and sisters because I worked all the time. He was a good daddy. He was raising his two girls and just had a little baby boy. He'd been with his girlfriend 15 years. He didn't bother nobody." She added the victim was a straight-A student, who went to school until the eleventh grade.

On cross-examination, defense counsel asked whether Gibbs had been a member of the Crips gang and specifically whether she knew her son was wearing all blue when he was shot. His mother said she did not know what he was wearing, but blue was his favorite color. She also denied he was

a member of the Crips gang. She stated, however, that she was aware police officers had executed a narcotics search warrant at her son's apartment about a week prior to his murder and that he had been arrested for misdemeanor possession of marijuana. She agreed with defense counsel's statement that he had a teardrop tattoo under his eye and had a tattoo on his back that said, "Are you greedy?" She also admitted her son "had some brushes with the law" and confirmed her son was convicted of a state jail felony, serving three months in jail for that offense.

On re-direct-examination, Gibbs again confirmed that she was aware her son had been convicted of drug possession for which he served three months and "had a misdemeanor marijuana charge." The prosecutor then concluded: "And that's about it?" She responded, "That's it."

On re-cross-examination, defense counsel wanted to probe further by asking Gibbs whether she knew her son was charged and "no billed" in 2001 and 2002 for possession of a controlled substance. The State objected, indicating the witness had already stated she was not aware of any other offenses. The trial judge sustained the objection. Defense counsel argued he was entitled to the additional questions, because Gibbs gave an inaccurate response when asked about her son's criminal history. The trial judge ruled defense counsel could not inquire further into the matter. On appeal, appellant urges the trial court's decision was reversible error.

An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). As long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

Generally, a party is not entitled to impeach a witness on a collateral matter. *See Shipman v. State*, 604 S.W.2d 182, 183 (Tex. Crim. App. 1980); *Bates v. State*, 587 S.W.2d 121, 133 (Tex. Crim.

App. 1979). In his brief, appellant argues that his "defensive theory was that Moran lied when she identified [him] as the shooter of her friend Gibbs." Therefore, we conclude Gibbs's criminal history was merely collateral to the case at hand.

We note an exception to the general rule stated in *Ramirez* exists when a witness leaves a false impression concerning a matter relating to *her credibility* (such as her own criminal history), giving the party latitude to correct the false impression. *Id.* at 676. But courts construe this false impression exception narrowly. *James v. State*, 102 S.W.3d 162, 181 (Tex. App.–Fort Worth 2003, pet. ref'd). In this case, Gibbs's knowledge of her son's history of being "no billed" does not relate to her credibility and thus, the false impression exception does not apply. In addition, the false impression exception does not allow counsel to rely on his own interrogation during cross-examination to contradict the witness and then admit evidence of collateral matters which would be otherwise inadmissible. *Crenshaw v. State*, 125 S.W.3d 651, 656 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd). Thus, we conclude the trial court did not abuse its discretion in limiting defense counsel's cross-examination of the victim's mother. *See Ramos*, 245 S.W.3d at 417-18. We overrule appellant's second issue.

We affirm the trial court's judgment.

DAVID L. BRIDGES
JUSTICE

Do Not Publish
Tex. R. App. P. 47
100528F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

GREGORY DEANGELO GARNER A/K/A
GREGORY UNDERWOOD, Appellant

No. 05-10-00528-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No.
2 of Dallas County, Texas. (Tr.Ct.No. F09-
51267-NI).
Opinion delivered by Justice Bridges,
Justices Richter and Murphy.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 14, 2012.

_____
DAVID L. BRIDGES
JUSTICE